Michelle Press (SBN 163637)
Patrick Bollig (SBN 248255)
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:(213) 443-5100
Facsimile: (213) 443-5101
michelle.press@wilsonelser.com

Attorneys for Plaintiff
Evanston Insurance Company, successor by merger with Essex Insurance Company and in its own right

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, successor by merger with Essex Insurance Company and in its own right,<br><br>Plaintiff,<br><br>v.<br><br>RONALD L. WOLFE & ASSOCIATES, INC., a California corporation; RONALD L. WOLFE & ASSOCIATES, INC. DBA WOLFE & ASSOCIATES, PROPERTY SERVICES; STEPHANIE GRACE, LUCAS FITCH, AVA HOSSEINI, JARED A. NICOL, ANYA MERKLE and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND UNJUST ENRICHMENT** |

Plaintiff Evanston Insurance Company, successor by merger to Essex Insurance Company, and in its own right ("plaintiff" or "Evanston"), by and through its attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker

LLP, hereby brings the following complaint against defendants Ronald L. Wolfe & Associates, Inc.; Ronald L. Wolfe & Associates, Inc. dba Wolfe & Associates, Property Services; Stephanie Grace; Lucas Fitch; Ava Hosseini; Jared A. Nicol; Anya Merkle; and DOES 1 through 20, as follows.

## THE PARTIES

1. At all relevant times, plaintiff was an insurance company duly organized under the laws of Illinois, with its principal place of business located in Illinois.

2. Plaintiff is the successor by merger to Essex Insurance Company. As a result of the merger, plaintiff Evanston Insurance Company has assumed all risks and liabilities of Essex Insurance Company, including any and all liability under policy number CL042500514 issued to insured "Elliott Family Trust" for the policy period August 20, 2012 to August 20, 2013 ("the Essex Policy").

3. Plaintiff is informed and believes that at all relevant times, defendant Ronald L. Wolfe & Associates, Inc. was, and currently is a corporation duly organized under the laws of California. Plaintiff is informed and believes that Ronald L. Wolfe & Associates, Inc. sometimes did business as Wolfe & Associates, Property Services. Defendants Ronald L. Wolfe & Associates, Inc. and its dba, Wolfe & Associates, Property Services, are collectively referred to herein as "Wolfe."

4. Plaintiff is informed and believes and based thereon alleges that, at all relevant times, defendant Stephanie Grace was and is an individual residing in the state of California.

5. Plaintiff is informed and believes and based thereon alleges that, at all relevant times, defendant Lucas Fitch was and is an individual residing in the state of California.

6. Plaintiff is informed and believes and based thereon alleges that, at all relevant times, defendant Ava Hosseini was and is an individual residing in the state of California.

7. Plaintiff is informed and believes and based thereon alleges that, at all relevant times, defendant Jared A. Nicol was and is an individual residing in the state of California.

8. Plaintiff is informed and believes and based thereon alleges that, at all relevant times, defendant Anya Merkle was and is an individual residing in the state of California.

9. Defendants Does 1 through 20, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes, and based thereon alleges that each of the fictitiously named defendants has some interest in the insurance policy or the complaint at issue. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant also refers to all defendants sued under fictitious names.

## JURISDICTION

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC section 2201 because an actual controversy exists within the Court's jurisdiction that merits relief. This Court has jurisdiction pursuant to 28 USC section 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

11. Venue is proper in this judicial district pursuant to 28 USC section 1391(a)(2) because the underlying action for which defendants seek insurance coverage is currently pending in the Superior Court of the State of California for

the County of Santa Barbara. Venue is also proper in this judicial district pursuant to 28 USC section 1391(c) because the defendants, and each of them, are subject to the Court's personal jurisdiction because they are residents of the Court's judicial district.

## THE INSURANCE POLICIES

12. Essex Insurance Company issued a commercial general liability insurance policy, policy number CL042500514, to named insured "Elliott Family Trust" for the policy period August 20, 2012 to August 20, 2013 ("the Essex Policy"). A true and correct copy of the Essex Policy is attached hereto as Exhibit 1 and incorporated herein by this reference as if set forth in full.

13. The Essex Policy provides commercial general liability ("CGL") insurance coverage. Subject to its other terms, conditions, limitations, exclusions, and provisions, the Essex Policy provides coverage for those sums the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" caused by an "occurrence" that takes place in the coverage territory during the policy period.

14. Subject to other forms and endorsements, the Essex Policy provides coverage pursuant to form CG 00 01 12 07, which provides in pertinent part as follows regarding plaintiff's right and duty to defend the insured:

> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit"

> seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

15. The Essex Policy defines "Who is an Insured" to include, in pertinent part, "[a]ny person (other than your 'employee' or 'volunteer worker') or any organization while acting as your real estate manager."

16. The Essex Policy contains a Combination General Endorsement that expressly modifies the commercial general liability coverage as follows, in pertinent part:

> Professional liability, errors, omission, negligent acts, malpractice and/or acts of any type including rendering or failure to render any type professional service is not covered under this policy, unless such coverage is specifically endorsed onto the policy.

17. Evanston Insurance Company issued excess liability policy number XOWE208212 to named insured "Elliott Family Trust" for the policy period August 20, 2012 to August 20, 2013 (the "Evanston Excess Policy"). The Evanston Excess Policy schedules the Essex Policy as underlying insurance. A true and correct copy of the Evanston Excess Policy is attached hereto as Exhibit 2 and incorporated herein by this reference as if set forth in full.

18. The insuring agreement of the Evanston Excess Policy provides that it follows the form of the underlying Essex Policy, as follows, in relevant part:

> Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this

> policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4. of the Declarations (*i.e.*, the Essex Policy).

19. The Evanston Excess Policy expressly states that plaintiff shall not owe a duty to defend under the Evanston Excess Policy, although plaintiff retains the right to participate in the defense upon its election:

> Defense.
>
> The Company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceedings instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claim, suit or proceeding relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy...

20. The Evanston Excess Policy contains a non-drop down provision by endorsement, which provides as follows:

> In consideration of the premium charged it is hereby understood and agreed that the aggregate limit of liability of any underlying insurance as set forth in Item 4 of the Declarations shall not be reduced by 'Ultimate Net Loss' as respects coverage excluded hereunder. It

> shall be the insured's sole responsibility to provide other insurance or self-insurance for any impairment of the underlying aggregate limit as a result of the "Ultimate Net Loss".

21. The Evanston Excess Policy also contains a professional services exclusion, as follows:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> PROFESSIONAL LIABILITY EXCLUSION
>
> In consideration of the premium charged, it is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in any way contributed to the rendering or failure to render any professional service.

**THE CONSOLIDATED LIABILITY ACTIONS**

22. On or about April 24, 2013, individual defendant Stephanie Grace ("Grace") filed a complaint entitled *Stephanie Grace v. Ronald L. Wolfe & Associates, Inc., Elliot Family 1993 4/28/93 Trust, et al.*, Santa Barbara County Superior Court, Case No. 1416798 ("the Grace Action"). The complaint filed in the Grace Action alleges that on April 6, 2013, Grace was a lawful invitee and guest at 6643 Del Playa Drive in Isla Vista/Goleta, CA 93171, when a second-floor balcony in the backyard collapsed, causing injury and damages. The complaint alleges at paragraph 12 therein that defendants "failed to perform routine upkeep and maintenance on the SUBJECT PROPERTY; failed to make

reasonable inspections of the SUBJECT PROPERTY to discover unsafe conditions on the property such as termites and wood rot; failed to remedy the unsafe conditions on the SUBJECT PROPERTY; and/or failed to provide adequate warnings regarding dangerous and unsafe condition[s] on the property."

23. Thereafter, the other individual defendants herein – Lucas Fitch, Ava Hosseini, Jared A. Nicol, and Anya Merkle – filed similar complaints, and the Court ordered those actions consolidated with the Grace Action. Claimants allege in the Consolidated Actions that on April 6, 2013, they were invitees or guests at 6643 Del Playa Drive in Isla Vista/Goleta, California 931171, when a second-floor wooden balcony in the backyard collapsed, thereby causing injury and damages to claimants. The Grace Action and the consolidated actions are hereinafter referred to collectively as "the Consolidated Actions." The individual defendants herein – Stephanie Grace, Lucas Fitch, Ava Hosseini, Jared A. Nicol, and Anya Merkle – are hereinafter collectively referred to as "claimants."

24. On or about February 8, 2016, claimants in the Consolidated Actions filed a Motion for Leave to File First Amended Complaint to Allege Punitive Damages ("the Motion for Leave"). The Motion for Leave asserts that "this case involves the preventable collapse of a wooden deck at a rental property on April 6, 2013. What was unknown to plaintiffs at the time their complaints were filed, but which has become very clear through discovery, was that the company that manages the subject property (i.e., WOLFE) was aware of structural problems with the subject deck (including but not limited to extensive dry rot and termite damage) for years before the collapse." (Motion, p. 2:6-10.) The motion further asserts that Wolfe "did nothing to remedy or warn of the danger." (Motion, p. 2:11.) A true and correct copy of the Motion for Leave is attached hereto as Exhibit 3.

25. The Motion for Leave attached proposed first amended complaints on behalf of each of the individual claimants. For convenience and ease of

reference, this complaint quotes the proposed first amended complaint submitted on behalf of claimant, and defendant herein, Grace rather than the quoting the specific allegations of each claimant. The allegations in the proposed first amended complaints on behalf of the other claimants are similar to those submitted in the Grace proposed first amended complaint.

26. The Grace proposed first amended complaint alleges that "when defendant [Wolfe] took over the management of the SUBJECT PROPERTY in 2005," Wolfe was "specifically informed that the SUBJECT PROPERTY had a long history of reoccurring structural wood rot damage that would make ongoing inspection and maintenance a significant management issue. Yet, over the years that followed, there was an ever increasing issue with wood rot and termite damage at the SUBJECT PROPERTY that went largely unaddressed by the defendants." (Grace Proposed FAC, ¶13.)

27. The Grace proposed first amended complaint alleges: "In or about 2009 (4 years before the incident), defendant [Wolfe] was specifically informed that the subject balcony had developed extensive structural wood rot damage, that it was a serious safety hazard, and that it needed to be replaced. As a property management company, defendant [Wolfe] was well aware of the safety hazards associated with structural wood rot damage; including but not limited to the probability of deck failure and collapse. Despite that awareness … [Wolfe] did nothing to address and repair the subject deck or to warn of the same." (Grace Proposed FAC, ¶14.)

28. The Grace proposed first amended complaint alleges that, "In early 2012 (more than 1 year before the incident), [Wolfe] received two termite reports which indicated that there was extensive termite and fungus/wood rot damage throughout the SUBJECT PROPERTY, including in the subject balcony. Defendant [Wolfe] was instructed, in part, to have a licensed contractor make necessary repairs to the subject deck. However, defendant [Wolfe] never reported

those findings to the tenants, and it took no corrective and curative measures." (Grace Proposed FAC, ¶15.)

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief Against All Defendants:**

**No Duty to Indemnify Wolfe and DOES 1-10 under the Essex Policy)**

29. Plaintiff hereby refers to and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this complaint as if set forth in full herein.

30. Plaintiff contends there is no coverage under the Essex Policy, and that plaintiff is under no obligation to indemnify Wolfe and DOES 1-10 in the Consolidated Actions filed by or on behalf of claimants, without limitation or waiver as to other coverage defenses not specified herein, in that:

a. The Essex Policy expressly provides: "Professional liability, errors, omission, negligent acts, malpractice and/or acts of any type including rendering or failure to render any type professional service is not covered under this policy, unless such coverage is specifically endorsed onto the policy."

b. As evidenced by claimants' operative pleadings, claimants' Motion for Leave and proposed First Amended Complaints attached thereto, discovery, and evidence in the Consolidated Actions, the claim(s) asserted in the Consolidated Actions arise out of and are based on Wolfe's alleged failure to render professional property management services.

31. Plaintiff is informed and believes and thereon alleges that defendants dispute plaintiff's contentions regarding the lack of coverage for the Consolidated Actions under the Essex Policy. Plaintiff therefore seeks a judicial determination of its rights and obligations and the rights and obligations of the parties herein

regarding its lack of a duty to indemnify the Consolidated Actions under the Essex Policy.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Relief Against All Defendants:**

**No Duty to Defend Wolfe and DOES 1-10 under the Essex Policy)**

32. Plaintiff hereby refers to and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this complaint as if set forth in full herein.

33. Plaintiff contends there is no coverage under the Essex Policy, and that plaintiff is under no obligation to defend Wolfe or DOES 1-10 in the Consolidated Actions filed by or on behalf of claimants, without limitation or waiver as to other coverage defenses not specified herein, in that:

a. The Essex Policy expressly provides: "Professional liability, errors, omission, negligent acts, malpractice and/or acts of any type including rendering or failure to render any type professional service is not covered under this policy, unless such coverage is specifically endorsed onto the policy."

b. As evidenced by claimants' operative pleadings, claimants' Motion for Leave and proposed First Amended Complaints attached thereto, discovery, and evidence in the Consolidated Actions, the claim(s) asserted in the Consolidated Actions arise out of and are based on Wolfe's alleged failure to render professional property management services.

34. Plaintiff is informed and believes and thereon alleges that defendants dispute plaintiff's contentions regarding the lack of coverage for the Consolidated Actions under the Essex Policy. Plaintiff therefore seeks a judicial determination of its rights and obligations and the rights and obligations of the parties herein

regarding its lack of a duty to defend the Consolidated Actions under the Essex Policy.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Relief Against All Defendants: No Duty to Indemnify Wolfe and DOES 1-10 under the Evanston Excess Policy)**

35. Plaintiff hereby refers to and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this complaint as if set forth in full herein.

36. Plaintiff contends that it has no duty to indemnify Wolfe and DOES 1-10 for the Consolidated Actions filed by or on behalf of claimants under the Evanston Excess Policy, without limitation or waiver as to other coverage defenses not specified herein, in that:

a. The Evanston Excess Policy expressly follows the form of the Essex Policy; accordingly, the professional liability exclusion in the Essex Policy also applies to the Evanston Excess Policy.

b. The Evanston Excess Policy contains an additional professional liability exclusion that states that the policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in any way contributed to the rendering or failure to render any professional service.

c. As evidenced by claimants' operative pleadings, claimants' Motion for Leave and proposed First Amended Complaints attached thereto, discovery, and evidence in the Consolidated Actions, the claim(s) asserted in the Consolidated Actions arise out of and are based on Wolfe's alleged failure to render professional property management services.

37. Plaintiff is informed and believes and thereon alleges that defendants dispute plaintiff's contentions regarding the lack of coverage for the Consolidated

Actions under the Evanston Excess Policy. Plaintiff therefore seeks a judicial determination of its rights and obligations and the rights and obligations of the parties herein regarding the lack of a duty to indemnify the Consolidated Actions under the Evanston Excess Policy.

## FOURTH CLAIM FOR RELIEF

**(Declaratory Relief Against All Defendants: No Duty to Defend Wolfe and DOES 1-10 under the Evanston Excess Policy)**

38. Plaintiff hereby refers to and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this complaint as if set forth in full herein.

39. Plaintiff contends that it has no duty to defend Wolfe and DOES 1-10 for the Consolidated Actions filed by or on behalf of claimants under the Evanston Excess Policy, without limitation or waiver as to other coverage defenses not specified herein, in that:

a. The Evanston Excess Policy expressly states that plaintiff shall not owe a duty to defend under the Evanston Excess Policy, although plaintiff retains the right to participate in the defense upon its election.

b. The Evanston Excess Policy expressly follows the form of the Essex Policy; accordingly, the professional liability exclusion in the Essex Policy also applies to the Evanston Excess Policy.

c. The Evanston Excess Policy contains an additional professional liability exclusion that states that the policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in any way contributed to the rendering or failure to render any professional service.

d. As evidenced by claimants' operative pleadings, claimants' Motion for Leave and proposed First Amended Complaints

attached thereto, discovery, and evidence in the Consolidated Actions, the claim(s) asserted in the Consolidated Actions arise out of and are based on Wolfe's alleged failure to render professional property management services.

40. Plaintiff is informed and believes and thereon alleges that defendants dispute plaintiff's contentions regarding the lack of coverage for the Consolidated Actions under the Evanston Excess Policy. Plaintiff therefore seeks a judicial determination of its rights and obligations and the rights and obligations of the parties herein regarding the lack of a duty to defend the Consolidated Actions under the Evanston Excess Policy.

**FIFTH CLAIM FOR RELIEF**

**(Unjust Enrichment against All Defendants)**

41. Plaintiff hereby refers to and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this complaint as if set forth in full herein.

42. Plaintiff provided a defense to Wolfe in the Consolidated Actions under the Essex Policy by paying attorneys' fees and costs incurred on behalf of Wolfe. Plaintiff was never obligated to pay the amounts incurred in defending Wolfe in the Consolidated Actions.

43. Plaintiff is informed and believes that Wolfe's primary insurer is defendingWolfe in the Consolidated Actions.

44. Wolfe was unjustly enriched by plaintiff's payment of attorneys' fees and costs in the Consolidated Actions.

45. Plaintiff is entitled to reimbursement for all defense payments that plaintiff paid on Wolfe's behalf under the policy, plus pre-judgment interest at the legal rate.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against each of the defendants as follows:

1. As to the First Cause of Action, for a judicial declaration by this Court that plaintiff has no duty to indemnify Wolfe and DOES 1-10 under the Essex Policy with respect to the Consolidated Actions brought by claimants;

2. As to the Second Cause of Action, for a judicial declaration by this Court that plaintiff has no duty to defend Wolfe and DOES 1-10 under the Essex Policy with respect to the Consolidated Actions brought by claimants;

3. As to the Third Cause of Action, for a judicial declaration by this Court that plaintiff has no duty to indemnify Wolfe and DOES 1-10 under the Evanston Excess Policy with respect to the Consolidated Actions brought by claimants;

4. As to the Fourth Cause of Action, for a judicial declaration by this Court that plaintiff has no duty to indemnify Wolfe and DOES 1-10 under the Evanston Excess Policy with respect to the Consolidated Actions brought by claimants;

5. As to the Fifth Cause of Action:

(a) For general and special damages according to proof at the time of trial as provided by law;

(b) For full reimbursement of all amounts plaintiff paid under the Essex Policy on Wolfe's behalf, and in particular, all defense payments relating to the Consolidated Actions;

(c) For pre-judgment interest calculated from the dates of each individual payment;

(d) For post-judgment interest;

(e) For attorneys' fees;

6. As to all Causes of Action:

(f) For costs and expenses of suit herein; and

(g) For such other relief as the court deems just and proper.

DATED: September 15, 2016

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By ______________________
Michelle Press
Attorneys for Plaintiff Evanston Insurance Company, successor by merger with Essex Insurance Company and in its own right